

1301 K Street NW
Suite 500 East
Washington, D.C., 20005

**Nathan Siegel**
202-973-4237 tel
202-973-4499 fax

nathansiegel@dwt.com

July 6, 2023

**VIA ECF**
Honorable Theodore D. Chuang
United States District Judge, U.S. District Court for the District of Maryland
600 Cherrywood Lane
Greenbelt, Maryland 20770

**Re:**   *Thomas Logan v. Oxygen Media, LLC*, Case No. 8:23-cv-01156-TDC

Dear Judge Chuang:

      We represent Defendant Oxygen Media, LLC in this case.  In accordance with this Court's Case Management Order (ECF No. 15), Defendant respectfully requests permission to move to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

      The suit arises from a 45-minute television documentary ("the Documentary"), which tells the story of a murder in Prince George's County and how law enforcement solved the crime.  Three minutes of the program (at 16:38-19:30) explained Plaintiff's connection to that investigation.[1]  The victim was murdered while walking to meet Plaintiff to play basketball, so the victim's family voiced their opinion to investigators that Plaintiff might have been involved.  The Documentary recounts how law enforcement proceeded to interview Plaintiff, conduct an extensive investigation of electronic evidence, conclude the evidence "validated" Plaintiff's account and therefore "clear[ed]" him of any involvement.  After explaining that Plaintiff was cleared, he is never mentioned again.  The rest of the program depicts how investigators eventually determined that the victim was murdered by a paramour's ex-boyfriend (Franklin Scott), with assistance from a friend (Olajuwon Jackson).  Both men were ultimately convicted.

***<u>Plaintiff's Defamation Claim Fails as a Matter of Law</u>***

      Every defamation case presents the "threshold question" of whether the challenged publication "is reasonably capable of a defamatory interpretation" that is alleged by the plaintiff. *Batson v. Shiflett*, 325 Md. 684, 723 (1992). That threshold inquiry is purely "a question of law for the court." *Chesapeake Publ'g Corp. v. Williams*, 339 Md. 285, 295 (1995).  Courts are required to assess words within the context of the "whole publication," which in the context of

---

[1] Defendant will separately provide the Court with a flash drive containing the Documentary, which is also accessible at https://www.oxygen.com/final-moments/season-1/episode-8/the-streets-are-talking.

DWT.COM

Hon. Theodore D. Chuang
July 6, 2023
Page 2

films, means that words must be evaluated within the context of the whole program, not in isolation. *See, e.g.*, *Virginia Citizens Def. League v. Couric*, 910 F.3d 780, 786 (4th Cir. 2018).

The Complaint only quotes statements from the Documentary which explain how Plaintiff came to be investigated by police, omitting all the statements that immediately follow explaining how and why he was cleared. *See, e.g.,* Complaint ¶¶ 50, 55-58. And on the basis of those cherry-picked statements, the Complaint alleges the Documentary implied Plaintiff was involved in the murder. *Id.* ¶ 45. But viewed as a whole, the program is not reasonably capable of that alleged meaning. To the contrary, the Documentary affirmatively debunks it. Plaintiff's claim thus fails as a matter of law. *See, e.g.*, *Couric*, 910 F.3d at 786 ("[t]his claim fails because it divorces the twelve-second clip from the film as a whole").

Indeed, courts have repeatedly held that, viewed as a whole, a publication did not convey that a plaintiff was responsible for a crime or other misconduct even where (unlike here), the publication did *not* explicitly report that the plaintiff was officially absolved. For example, in *Chesapeake Publishing* the Court of Appeals considered a newspaper article involving allegations of physical child abuse made in the context of a custody dispute. Like the Documentary, "[t]he information and opinions expressed in the article were based upon a comprehensive review of the court file in the custody dispute and interviews with various participants in the case . . . ." 339 Md. at 300. But unlike the Documentary, that article did *not* report that the plaintiff was cleared of any such conduct. Even so, the Court held that, read as a whole, the statements in the article could not amount to a defamatory accusation that the plaintiff had committed abuse, because "when read in its entirety" the story "offer[ed] [the defendant's] views, the perspectives of others involved in the case, and [the reporter's] own observations of the events surrounding this high profile custody battle." *Id.* *See also Janklow v. Newsweek, Inc.*, 759 F.2d 644, 649 (8th Cir. 1985) (holding that publication that discussed allegations that plaintiff committed rape could not "be read to imply that [plaintiff] was actually guilty of the alleged rape"), *on reh'g (en banc)*, 788 F.2d 1300 (8th Cir. 1986). This is a much clearer case than even *Chesapeake Publishing*, since the Documentary explicitly cleared Plaintiff of any involvement.

And courts are especially reluctant to recognize defamation claims that, like this one, are premised on alleged implications. Thus, even where articles have raised pointed questions about alleged misconduct by the plaintiff, *without* providing any answers, courts have held that the articles did not amount to a defamatory implication that the plaintiff was guilty. *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1094 (4th Cir. 1994). *See also Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328, 1338 (D.C. Cir. 2015). Here, any questions initially raised about Plaintiff's involvement are not only immediately answered, the answer absolves Plaintiff.[2]

Finally, the defamation claim also fails as a matter of law for several other reasons. The statements by family members merely expressed their opinions, which caused investigators to

---

[2] The same analysis applies to a single trailer for the Documentary about which Plaintiff complains, which appears on a webpage along with four other trailers and a news article

Hon. Theodore D. Chuang
July 6, 2023
Page 3

inquire further.  In addition, the few minutes at issue are also protected by the fair report privilege, which protects accounts about the investigation and prosecution of crimes.  *See Chesapeake Publishing*, 339 Md. at 300.  The Documentary explains how Plaintiff became involved in a law enforcement investigation and was cleared.

### *Plaintiff's Remaining Tort Claims Similarly Fail as a Matter of Law*

Plaintiff's remaining claims are simply an effort to re-plead the defamation claim as different torts.  They therefore fail for the same reasons.  Courts have consistently held that a plaintiff may not avoid legal requirements for defamation claims by re-styling them as some other tort.  *See, e.g.*, *Hustler Magazine v. Falwell*, 485 U.S. 46, 56 (1988); *Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 194 F.3d 505, 522 (4th Cir. 1999); *Crowley v. Fox Broad. Co.*, 851 F. Supp. 700, 704 (D. Md. 1994) ("In Maryland, a claim for false light invasion of privacy may not stand unless the claim also meets the standards for defamation.").

The claim for intentional infliction of emotional ("IIED") also independently fails because the Complaint fails to plead facts that could possibly establish Defendants' conduct was extreme and outrageous.  *Ky. Fried Chicken Nat. Mgmt. Co. v. Weathersby*, 326 Md. 663, 670 (1992) (stating the tort should be "used sparingly and only for opprobrious behavior that includes truly outrageous conduct.").  Plaintiff's claim for "tort of outrage" is duplicative of his IIED claim and thus fails for the same reasons. *Jarvis v. Enter. Fleet Services & Leasing Co.*, No. CV DKC 2007-3385, 2009 WL 10685552, at *5 (D. Md. Feb. 12, 2009).  Finally, to the extent the Complaint might be construed to allege invasion of privacy by the misappropriation of Plaintiff's name, that claim would fail because his name was used in connection with depicting a newsworthy event.  *Lawrence v. The A.S. Abell Company*, 475 A.2d 448, 453 (1984).

The parties have met and conferred and have not resolved this matter without a motion.  Accordingly, Defendant respectfully requests permission to file a motion to dismiss.

Sincerely,

/s/ Nathan Siegel

Nathan Siegel

---

summarizing the case.  Compl. ¶ 2 (containing link to webpage).  The trailer never mentions Plaintiff and so is not itself "of and concerning" him, and in any event by definition a trailer does not purport to tell the full story and so must be evaluated in the context of the Documentary it promotes.  For all the reasons stated herein, the Documentary is not defamatory.